**CHRYSLER CORPORATION**

v.

**The UNITED STATES.**

No. 386–52.

United States Court of Claims.
March 6, 1957.

382

John W. Drye, Jr., New York City, for plaintiff. John J. Costello and Theodore Pearson, New York City, were on the briefs.

J. W. Hussey, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for defendant. Andrew D. Sharpe, Washington, D. C., was on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

WHITAKER, Judge.

By chapter 29, subchapter A, of the Internal Revenue Code of 1939, as amended, 26 U.S.C.A. § 3400 et seq.; there were levied manufacturers' excise taxes on the sale of tires and tubes, toilet preparations, automobiles, radio receiving sets, mechanical refrigerators, lubricating oils, gasoline, etc. By subchapter B there were levied import taxes on certain articles. Subchapter C dealt with general administration.

Section 3443 of subchapter C, under "General Administrative Provisions," gave a cerdit or refund against the taxes levied on sales by a manufacturer or producer, "in the amount of any tax under this chapter which has been paid with respect to the sale of—(A) any article (other than a tire, inner tube, or automobile radio taxable under section 3404) purchased by him and used by him as material in the manufacture or production of, or as a component part of, an article with respect to which tax under this chapter has been paid * * *."

Plaintiff manufactures automobiles. In their manufacture, it uses gasoline and lubricating oils, on which taxes have been paid. It sues for a refund of the amount thereof.

The stipulation of facts, which we have substantially adopted as our findings of fact, shows that in the manufacture of an automobile it is necessary to use gasoline "to test engines," "to propel the motor vehicles in the later stages of manufacture and testing," and "to propel intraplant lift trucks or jitneys which move vehicle parts from stock to assembly line." Also, in the manufacturing process lubricating oils are used "to spray on pistons and rings," "to brush on crankshaft bearings," "to lubricate engines during engine test," "to fill crankcases of tested engines," "to lubricate transmissions during transmission test," "to fill tested transmissions," "to fill rear-axle assemblies," "to fill steering-gear assemblies," "to fill carburetor air cleaners," "as a drawing compound in stamping sheet metal vehicle parts," "to lubricate manufacturing machinery," and "to lubricate intraplant lift trucks or jitneys which move vehicle parts from stock to assembly lines."

Plaintiff seeks a refund of the taxes paid on gasoline and lubricating oil used for the above purposes. It is entitled to this refund if the gasoline and oil can be said to have been "used by him as material in the manufacture or production of, or as a component part of" the automobiles.

Without question they were materials used in the manufacture of the automobile; but were they such materials as were in the mind of Congress when section 3443 was enacted?

The purpose of section 3443 was to avoid double taxation. If a part of the article sold had already been taxed, it would be double taxation to levy a tax measured by the sales price of the entire article, unless credit was given for the tax already paid on a part of it. But the gasoline and oil used for testing, in spraying the pistons and rings, in propelling intraplant lift trucks, and in lu-

bricating manufacturing machinery, were no part of the automobile sold. They had been consumed in the manufacturing process.

It is true that their cost was taken into account in fixing the sales price, but so was the cost of labor, the salaries of executives, advertising, upkeep of plant and machinery, etc. These things, however, were not a part of the thing sold.

The only oil that could be said to have been sold was the oil left in the engine and other parts when the finished automobile was sold. This probably was taken into account in fixing the sales price. At least, for the sales price the purchaser got the car with this oil in it. We are of opinion that the manufacturer is entitled to a credit for the amount of the oil in the automobile when sold. This was the oil "to fill crankcases of tested engines," "to fill tested transmissions," "to fill rear-axle assemblies," and "to fill carburetor air cleaners." Cf. Estoppey v. United States, 83 F.Supp. 840, 113 Ct.Cl. 294.

We are of the opinion that the oil used for other purposes, and the gasoline, were not "used by him [the manufacturer] as material in the manufacture or production of, or as a component part of" the automobile. Component parts were sold with the automobile, and any material that went into its construction were sold with it; but things that were consumed in the manufacturing process were not sold.

Many materials were used in the manufacture of the automobile, riveting machines, belts and pulleys, wrenches, hammers, oil and gasoline—various things, but they were not a part of the thing sold. A manufacturer, under section 3443, was entitled to credit for the tax he had paid on a component part, as a battery, the heater, the radio, the air conditioner, the rear mirror, the windshield wiper, because they were parts of the things sold. The "materials" of which section 3443 speaks, by analogy, must also have been a part of the thing sold, as distinguished from the materials used in the manufacturing process.

We are aware that the Court of Appeals for the Second Circuit, in a *per curiam* opinion in Western Cartridge Co. v. Smith, 121 F.2d 593, took a contrary view with respect to cartridges used in testing firearms, but we respectfully disagree.

The total tax paid on the oil in the automobiles when they were sold and which was sold with them, for the year 1946 was $107,505.02; for 1947 was $135,769.92; and for 1948 was $138,378.-33. Plaintiff is entitled to recover the total amount of $381,653.27, plus interest as provided by law. Judgment will be entered accordingly.

It is so ordered.

JONES, Chief Judge, and LARA-MORE, MADDEN and LITTLETON, Judges, concur.